**STATE of Missouri,
Plaintiff-Respondent,**

v.

**George W. JOHNSON,
Defendant-Appellant.**

No. 14262.

Missouri Court of Appeals,
Southern District,
Division Two.

April 9, 1987.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 1, 1987.

Application to Transfer
Denied June 16, 1987.

William L. Webster, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Dee Wampler, Lawrence R. Catt, Wampler, Wampler & Catt, Springfield, for defendant-appellant.

DOUGLAS E. LONG, Jr., Special Judge.

Appellant George W. Johnson was convicted of selling methamphetamine after a jury trial and sentenced to serve a term of twenty years. Appellant raises two points on this appeal.

Jack Merritt, a Corporal with the Missouri State Highway Patrol was working an undercover operation in Seymour, Missouri. A confidential informant introduced Merritt to one Carl Milligan who said he knew someone who would sell Merritt some "crank" or "crystal", slang terminology for methamphetamine. Merritt went with his informant and Milligan to the apartment of appellant, who was there discussing a large quantity of marijuana he said he could truck in from out-of-state. The conversation turned to methamphetamine and appellant produced a vial of white substance which he said was a sample of the quality he could acquire. Merritt pretended to use the substance to determine its property and worth. Price was discussed and appellant left with Milligan, agreeing to meet with Merritt and the informant later again that night. Appellant rejoined Merritt and the informant at the Seymour Inn and asked if they would be interested in a smaller measure of crystal or crank. Merritt agreed to purchase three grams, whereupon appellant said he would need an advance of $100 before he could "go buy it", and $200 more when he returned with the substance. When appellant came back the second time he gave Merritt three vials of a white powdery substance and phone numbers to set up future transactions. Merritt paid the additional $200 and drove off with the evidence. He returned to appellant's abode with the Sheriff's Department to serve the warrant for appellant's arrest. Subsequent laboratory testing indicated that the white powdery substance was methamphetamine.

In his first point presented for our review the appellant contends that the trial court erred in overruling a motion in limine and then in permitting evidence of test results to be considered by the jury when the state failed to lay an evidentiary foundation.

In *State v. Williamson*, 595 S.W.2d 4 (Mo.App.1979), the State's witness had been employed by the St. Louis Police Department for 9½ years. He was well qualified by training and experience to conduct chemical analysis and present his reports to the court. The defendant challenged both his credentials and his drug analysis. The court said, "Mr. Stevens related in substantial detail the type of tests conducted in preparing the analysis report on the item suspected of being a controlled substance." He testified that he conducted tests which revealed the nature of the drug to be phenmetrazine. The analysis was admitted in evidence for the purpose of showing the nature of the drug. Although Stevens did not exactly remember "doing each of the specific tests" he was steadfast in his assertion that all analytical tests which he enumerated and described were invariably performed where phenmetrazine was suspected. He was also unequivocal in stating that the tests revealed the presence of phenmetrazine. The reviewing court affirmed the trial court's decision to accept his credentials and found his testimony sufficient to establish the presence of phenmetrazine.

■ Five tests were performed on the substance taken from appellant. Afton Ware, a chemist employed by the Highway Patrol for 22 years, testified that to a reasonable degree of scientific certainty in his opinion the substance was methamphetamine. He was qualified by education and experience to offer his expert opinion to the jury and his credentials were unchallenged. He conducted five separate tests to confirm that the suspect powder was methamphetamine and based his opinion upon all of the tests. He did not equivocate in spite of the defense attorney's efforts on cross-examination to maneuver him into saying that he based his findings on the spectrophotometer alone, and that this apparatus had not been adequately checked before the final test. On the con-

trary, the witness steadfastly maintained that the report was based on all five tests and that as far as he knew, the machine had been checked. This testimony was sufficient to establish that the white powdery substance sold to Officer Merritt by appellant was methamphetamine.

Appellant complains that this evidence lacked foundation because there was no evidence that the device used for the infrared spectrophotometry test was checked. He cites us to *State v. Deimeke*, 500 S.W.2d 257 (Mo.App.1973) and *State v. Young*, 525 S.W.2d 440 (Mo.App.1975). In *Deimeke* evidence came in over a continuing objection that the test was conducted on a machine which was inaccurate and not functioning properly. In *Young*, the State's evidence conclusively showed that the reading of the breathalyzer machine was inaccurate. In the instant case there was no evidence that the infrared spectrophotometer of which appellant complains, was not operating properly.

In *State v. Means*, 628 S.W.2d 426 (Mo. App.1982), the appellant argued that the State should first have shown that the instruments used by a criminalist were working properly, but the Eastern District Court of Appeals found that situation wholly dissimilar from radar cases. In a radar case the officer can only testify to what the meter indicates, but with neutron activation analysis the criminalist would use her own knowledge of science in determining what elements would be present in a glass sample.

This same rationale was used again by the reviewing court when the appellant complained of the method of conducting blood tests. Defendant contended that a proper foundation had not been laid for the admission of the tests but the court found this argument to be without merit. These contentions go not to the admissibility of the evidence but to its weight, and the weight to be accorded evidence is for the jury to determine. *State v. Edwards*, 641 S.W.2d 826 (Mo.App.1982).

Appellant also cites us to *City of Ballwin v. Collins*, 534 S.W.2d 280 (Mo.App. 1976), but unconvincingly. In that case the court considered the accuracy of a radar gun used to determine the defendant's speed. The appellate court reversed because the radar device had not been previously tested. We are not persuaded that radar tests for speeding automobiles are analogous to laboratory analysis where the accuracy of the test result is dependent not solely upon the accuracy of a single testing device, but relies upon five separate tests and the professional expertise of the chemist. In radar cases the operator can testify only to what speed the meter indicates whereas the criminalist uses his own knowledge of science to reach a conclusion as to the nature of an unknown substance. *State v. Cannady*, 660 S.W.2d 33 (Mo.App. 1983). But even if we allowed that the situations were sufficiently similar, all of the evidence in the case at bar was consistent with the proper functioning of the machine. Appellant presented no evidence at trial that the spectrophotometer was malfunctioning. A contention that a breathalyzer machine is not in proper operating condition can only be validly made if supported by some evidence that suggests a malfunction. *Collins v. Director of Revenue*, 691 S.W.2d 246, 253 (Mo. banc 1985).

We find no error in the trial court's decision to receive the findings of Afton Ware in evidence. Being entirely sans merit, appellant's first point is denied.

In his second point, appellant claims the court erred in failing to instruct the jury on entrapment. Section 562.066.1, RSMo 1986, states: "The commission of acts which would otherwise constitute an offense is not criminal if the actor engaged in the prescribed conduct because he was entrapped by a law enforcement officer...." Appellant's counsel argues in his brief that the sale occurred after numerous attempts by the police informant and only after appellant became fearful for his life and "his families' lives".

This statute has been construed by the Missouri Supreme Court in *State v. Willis*, 662 S.W.2d 252 (Mo. banc 1983). The statute requires proof of both inducement to engage in unlawful conduct and an absence of willingness to engage in such conduct.

"It is defendant's burden to go forward with evidence showing both unlawful government inducement and defendant's lack of predisposition." *Id.* at 255.

Initially we observe that appellant could not say that he was unlawfully induced to commit the crime and at the same time say that he did not do it. On direct examination, appellant denied that the sample he gave Merritt was crank. Then on cross-examination he denied that he ever said they were drugs.

Q. [Direct examination by Mr. Ramsdall] What other discussions were had that evening at the insistence of Carl Milligan?

A. [Appellant George W. Johnson] Well, after we had the light bulb in, then Carl had started a conversation about some marijuana or crank.

Q. And what was your response to that?

A. That I'd—I furnished some white powder that wasn't crank.

Q. What was that?

A. It was a caffeine substance that come out of those little caffeine pills like you would buy out of a magazine.

Appellant didn't remember getting any money. Instead he testified that Milligan got the money.

Q. [Mr. Ramsdall] All right. Then was there any money handed into the car or—

A. [Appellant George W. Johnson] Yes, but I don't remember handling it.

Q. All right. Who got the money?

A. Carl.

Q. Carl Milligan?

A. Right.

Q. You didn't get any money?

A. I still had to borrow money from my father to have cigarettes the next day.

Upon the court's insistence, appellant revealed that the name of his alleged supplier was Dennis Cantrell. When cross-examined, appellant denied that he gave any money to Dennis Cantrell.

Q. [Cross-examination by Mr. Thompson] Mr. Johnson, did this guy take any—Did you give Dennis Cantrell any

money in the early morning hours of June 23?

A. [Appellant George W. Johnson] No, I did not.

Q. You're telling this jury then, he let you have these drugs for free; is that right?

A. I never did say they were drugs. I told him to fix me up three bottles.

Q. Whatever he gave you, you got it for free; didn't you?

A. I suppose so, yes.

Q. Did you ever go back and pay him any money?

A. No, I didn't have no money to pay him.

Q. You got it for free?

A. The money was gave to Carl Milligan.

Q. Who was with you—Who was with you when you went to see Dennis Cantrell in the early morning hours of June 23, 1984?

A. Carl Milligan.

Q. Did he come in the house with you or—

A. No, he didn't.

Q. He remained in the car; is that right?

A. He did, yes.

Q. So this entire transaction took place just between yourself and Dennis Cantrell; is that right?

A. The transaction of me getting some powder in bottles?

Q. Yes.

A. Yes.

■ In general, the defense of unlawful entrapment is not available to an accused charged with an unlawful sale of narcotics who denies that he made the sale because the defense is premised on the basis that he did make the sale. *State v. Stock*, 463 S.W.2d 889, 892 (Mo.1971).

■ Appellant was trying to burn the candle at both ends. He wanted the jury to believe that it was Carl Milligan who bought the drugs from Cantrell, although Milligan stayed outside in the car during the buy. Appellant also wanted the jury to believe that he never got any money but acted only as a conduit. At the same time

he wanted to say that he was entrapped into selling drugs by the Missouri Highway Patrol officer. Appellant denied having admitted there were drugs, said that he did not give Dennis Cantrell any money, that he supposed that he got whatever it was for free, and that it was Carl Milligan who got the money. This attempt to distance himself from the transaction became inconsistent with the defense of entrapment and thus appellant finally became ensnared by his own equivocation. Although he never did directly deny that he sold methamphetamine, denial may be inferred from appellant's vacillation on the witness stand. The defense of entrapment was precluded and it follows that the instruction was properly refused.

Entrapment presupposes that the defendant intended to commit the crime, but that his intention was the result of police actions. *State v. Williams*, 542 S.W.2d 3, 6 (Mo.App.1976). The defense of entrapment is not generally available to a defendant who denies that he committed the offense. *State v. Bounds*, 644 S.W.2d 652, 653 (Mo. App.1981).

■ To show entrapment the defendant must show both an inducement to engage in unlawful conduct and an absence of willingness to engage in such conduct. *State v. Jenkins*, 674 S.W.2d 93, 95 (Mo.App. 1984). Before the sale ever took place, appellant was discussing another unlawful deal for marijuana he could bring in from out-of-state. After the sale, he proffered telephone numbers where he could be reached for future transactions. His conduct reveals a propensity for drug traffic and belies his protestation of entrapment.

The jury was not misled and the instruction on entrapment was properly refused. Appellant's second point is without merit and the judgment of the trial court is affirmed.

PREWITT, C.J., CROW, J., and ROBERT L. CAMPBELL, Special Judge, concur.