**STATE of Missouri, Plaintiff–Respondent,**

v.

**David R. BULLOCK, Defendant–Appellant.**

No. 26011.

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 26, 2005.

Irene Karns, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Richard A. Starnes, Assistant Atty. Gen., Jefferson City, for Respondent.

NANCY STEFFEN RAHMEYER, Judge.

David R. Bullock ("Appellant") appeals from his convictions for attempted statutory rape,[1] and attempted sexual exploitation of a minor.[2] Appellant contests the sufficiency of the evidence for both counts and claims error in the trial court's denial of an instruction claiming entrapment on both charges.

Because the sufficiency of the evidence is challenged and Appellant claims an entrapment defense for the reason that he was not predisposed to engage in the charged offenses, we shall set forth in greater detail a series of sordid internet and telephone communications between Appellant and the purported[3] victim than we usually would.

Viewed in the light most favorable to the verdict, the evidence indicates that a reserve deputy in Newton County created an undercover alter ego named "Ashley Anne" ("Ashley"), who purported to be thirteen years old; he used this profile, including a photograph,[4] to visit teen chat rooms on the internet to see if child molesters or pedophiles would "hit on him." On September 24, 2002, Ashley logged on[5] to a teen chat room with a subtitle for "older guys looking for younger girls"; she started no conversations in the chat room, but waited for someone to start a conversation with her.

Soon thereafter, Ashley got a "whisper"—which is a private message that

---

1. A violation of sections 564.011 and 566.032. All references to statutes are to RSMo 2000, unless otherwise indicated.

2. A violation of sections 564.011 and 573.023

3. We use the term purported victim because the "child" who was involved in the conversations was actually a reserve deputy and former police chief of Diamond, Missouri.

4. The photograph was provided from a photo of an actual child which was morphed or altered specifically for use by police departments.

5. All of the visitors to the chat room can see the names of all the people logged into the chat room.

could only be seen by Ashley and the sender—from Appellant who used the screen name "Lover of Young Females." In that whisper, Appellant suggested going to instant messenger [6] where just the two of them could talk. Appellant's screen name changed to Young Lover 33. The conversation lasted twenty to twenty-five minutes and the conversation became of a sexual nature.

Appellant stated, "I would like to meet you," to Ashley and that she was pretty. Appellant asked Ashley if she was in Missouri and "are u a naughty girl?" Ashley responded, "I can be as naughty as you would want. You would have to teach me...."

Ashley and Appellant engaged in seventeen more conversations from September 25, 2002, until October 18, 2002. It is unnecessary to relate the details of all the conversations, but it is clear that Appellant commenced sexual discussions in most of the conversations. For instance, Appellant often asked Ashley what she was wearing. When she responded, "shorts and t shirt," Appellant would ask the color of her panties or if she was wearing panties. He often asked whether she had played with herself the previous night and instructed her on how to masturbate.

The conversations continued about an actual future meeting between them. During the second conversation, when Ashley asked Appellant if he would be in the area sometime soon, Appellant responded that maybe he could pick her up after school one day "next week." Ashley said weekends were best for her so she could get permission to spend the night with her friends, but Appellant said anytime was good for him and specifically asked if she wanted to spend the night. Appellant suggested picking her up after

school, maybe on a Thursday, and spending the entire Friday and Saturday with her. Ashley often asked for a picture of Appellant, but Appellant failed to supply one, stating he was being careful because "there are too many cops out there." When Ashley asked, "cops out there? ? ? ? why?" Appellant stated, "men and underage girls." Ashley responded, "but i am agreeing ... what is wrong with that?"; Appellant informed her it was still against the law. Appellant specified that he needed to be careful; not because of the talking, but because of the meeting between them.

Additionally, Appellant advised Ashley how to download a web cam program by giving a false profile as an older person so that Appellant could show himself to her. When he discussed their future sexual encounter, Appellant was explicit that he would not use a "rubber" because he would have no feeling and he set the timing of their meeting around her period so she "won't need" birth control. Appellant requested details of her address and parents so he could check out the veracity of her statements to him.

Appellant further instigated conversations asking Ashley to bring younger friends with her for their meeting. He suggested he liked girls who were real flat chested and as young as six years of age; he asked her who her youngest friend was. Ashley advised Appellant that she had a friend that she could stay the weekend with and then discussed a friend who was ten years old, in the fourth grade, and a third grader who rode the school bus with her. Appellant specifically asked if Ashley would mind "me doing the 6 yold?"; he suggested the order would be the six year old first, next Ashley's friend, and then Ashley all night. Appellant introduced the

6. An instant messenger allows two people to     speak in real time privately to each other.

idea of filming the sexual encounters with Ashley and her friends and putting the recorded images on the internet. Appellant made it clear to Ashley that the planned meeting was against the law and they would be in trouble if any of the girls talked.

The conversations, including instant messenger conversations, e-mails and phone conversations, continued until October 18, 2002, when Appellant was arrested in Diamond, Missouri. In the conversations leading up to October 18, the plans were firmed up as to where to meet for the weekend. Ashley suggested Murphy's One Stop right after school and gave directions to the store. Appellant requested details about the meeting, including what Ashley would be wearing, and assured Ashley if the situation did not feel right, he would leave. Ashley was told to get the key to the bathroom and go to the restroom, where she would meet Appellant.

Appellant was arrested after he drove to Murphy's One Stop, exited his car, looked into the window of the store, and walked back toward his car. The female decoy, who was in the store, carried the key toward the bathroom, walking a few feet behind Appellant. In Appellant's car was an aluminum case with a web camera and drive, a laptop computer, and numerous compact discs for use in a computer. Appellant admitted to the officer his correspondence with Ashley, but indicated to the police that had Ashley shown up, he was going to contact the police to advise them to counsel Ashley about the dangers of meeting someone she only knew from the internet.

■ Appellant's argument in Point I is that the trial court erred in overruling his motion for judgment of acquittal because the State failed to prove that Appellant was guilty of attempted first degree statutory rape or attempted sexual exploitation of a minor in that Appellant never took a "substantial step" toward committing those offenses. While Appellant admits the sexual conversations occurred, he contends the drive to Diamond, Missouri, does not amount to a substantial step toward either crime. Appellant relies upon *State v. Bates*, 70 S.W.3d 532, 536 (Mo.App. W.D.2002), and *State v. Molasky*, 765 S.W.2d 597 (Mo. banc.1989), for the proposition that mere solicitation, including specific discussions about future plans, did not constitute a substantial step in the commission of the underlying crimes. The crimes in *Bates*, attempted statutory rape and attempted statutory sodomy, stemmed from Bates sending sexually explicit letters and pictures to a teenage girl. The crime in *Molasky*, attempted murder, emanated from conversations designed to arrange a murder of a prosecuting attorney and two others. *Bates* and *Molasky* are easily distinguishable; both involve an inmate who did no more than talk about the proposed crimes.

We find the analysis in *State v. Young*, 139 S.W.3d 194 (Mo.App. W.D.2004), to be squarely on point. In *Young*, the defendant engaged in e-mails and instant messaging of a sexual nature with a sheriff posing as a 14–year–old girl. *Id.* at 195. The defendant made plans to meet the victim at a bowling alley at a specific day and time and told the victim that he would be bringing condoms, alcoholic beverages, and lubricant. *Id.* The defendant was arrested when he arrived at the bowling alley at the prescribed time with condoms, four wine coolers and lubricant. *Id.* The court found the defendant committed a substantial step when he traveled to the arranged place at the arranged time carrying the "promised items." *Id.* at 197.

Here, conversations between Appellant and Ashley indicated that Appellant would meet thirteen-year-old Ashley and her

younger friends at a specific time and a specific location for the purpose of a sexual relationship and that it would be recorded on a computer camera for viewing by others. Ashley was instructed to get the restroom key and walk toward the restroom. Appellant arrived at the convenience store at the agreed-upon time with a computer, camera, and video diskettes. Appellant not only drove to the convenience store, he exited the car and looked into the convenience store that Ashley had entered. As she exited the store, he turned in the direction of the restrooms. The evidence supports a finding that Appellant took a substantial step to commit the crimes of statutory rape and sexual exploitation of a minor. Point I is denied.

■ In Point II, Appellant claims the jury should have been given an instruction allowing him to submit the defense of entrapment. The defense of entrapment lies where a law enforcement officer, or his agent, induced a person to engage in conduct that he is not otherwise ready and willing to do. Section 562.066.2; *State v. Willis*, 662 S.W.2d 252 (Mo. banc 1983). In other words, to assert the defense of entrapment, defendant must prove both inducement to engage in unlawful conduct and an absence of a willingness to engage in such conduct. *State v. Mitchell*, 897 S.W.2d 187, 191 (Mo.App. S.D.1995).

■ Appellant is correct that he is entitled to an instruction on any theory that the evidence and the reasonable inferences therefrom tend to establish. *See State v. Westfall*, 75 S.W.3d 278, 280 (Mo. banc 2002). However, the defense of entrapment is only available to a defendant if there is evidence both of an unlawful inducement by police to commit an unlawful act and the absence of a predisposition to engage in such conduct—that the defendant was not "ready and willing" to commit an unlawful act. Section 562.066.2;

*State v. Moore*, 904 S.W.2d 365, 368 (Mo. App. E.D.1995). If the defendant has any predisposition to commit the crime, there need not be an instruction on entrapment because the evidence is not sufficient enough from which a reasonable jury could find entrapment. *U.S. v. Berg*, 178 F.3d 976, 980 (8th Cir.1999). Moreover, the defense of entrapment is an affirmative defense by which the defendant must admit having engaged in the proscribed conduct to be entitled to an entrapment instruction. *See State v. Johnson*, 728 S.W.2d 675 (Mo.App. S.D.1987) (defendant not entitled to entrapment instruction where defendant denied the charge of selling narcotics).

Appellant tendered four jury instructions alleging the affirmative defense of entrapment. Appellant cites to the evidence that Ashley induced Appellant to take the "substantial step" of committing the crimes of statutory rape and sexual exploitation of a minor when he was not otherwise so inclined. Appellant contends that he was only willing to express his fantasies, which was not a crime he was charged or convicted of, and he was not willing to act upon his fantasies without the inducement by Ashley. He notes that Ashley initiated the majority of contacts with Appellant; specifically, he claims Ashley initiated seventeen of the nineteen instant messages and four of the eight e-mails between her and Appellant. Appellant indicated the portions of the conversations where Ashley first proposed that Appellant come to Diamond and persisted in trying to set a firm date; he claims he was reluctant to act on his desires. Appellant's claim that he would not have committed the charged offenses but for the enticement by Ashley is not supported by the evidence.

As noted above, on September 24, the first conversation was very much of a sex-

ual nature. Appellant stated Ashley was pretty and he would like to meet her. Appellant initiated the sexual conversations on the first meeting and continued the conversations throughout. Furthermore, on October 11, without any prompting by Ashley, Appellant initiated a conversation regarding whether Ashley would allow Appellant to record the sex on a computer cam and said he could let other people watch if she did not mind. It was Appellant who asked Ashley whether there was a motel in town and made suggestions regarding the future meeting. While it is true that Ashley was an enthusiastic participant, Appellant was completely willing to engage in criminal conduct. In determining Appellant's predisposition to commit the crime, we do not overlook the chat room where "Lover of Young Females" first introduced himself to Ashley was for older "guys" who like younger "girls." Appellant had read the profile of Ashley, knew she was thirteen years of age by the profile, and confirmed that fact with her on the internet when he initiated the sexual conversations.

Appellant first brought up the subject of the invitation to Ashley's younger "friends" and a group orgy, indicating he preferred children 6–8 years old; Appellant also suggested the video recording of the group sexual encounters. Appellant first talked about meeting Ashley when he suggested picking her up after school. Although Ashley did make the specific plans of where to meet Appellant, she did so at the request of Appellant to set it up for Friday to Sunday and who suggested that she get the key to the store's bathroom to meet there.

As for Appellant's claim that he expressed reservations, his reservation was not in committing the crime but in getting caught. On October 3, when Ashley asked if Appellant was going to come to Missouri, Appellant told her that he needed to phone again before he saw her; he needed to be careful of jail because "u are going to sleep with me." Appellant specifically informed Ashley that it was the future acts between them that were illegal and not the conversations. Appellant continuously requested Ashley's full name and address so he could check an online database to ensure that Ashley's family actually existed, but never gave his last name, address, or accurate birth date. Appellant had a full understanding that getting caught engaging in sexual activities in Diamond, Missouri, with a thirteen-year-old girl would result in jail. He protected himself from detection as well as he could by placing phone calls to Ashley and not allowing her to call him, refusing to give accurate identifying information about himself, and checking Ashley's biography with other data bases to insure its accuracy.

Our analysis of the messages convinces us the trial court did not err in disallowing the instructions of entrapment to be given to the jury. First, Appellant does not admit that he committed the crimes for which he was convicted and, second, there is no evidence that Appellant was not predisposed, ready and willing to commit these crimes. Appellant did not meet his burden of injecting into the case a proper case for entrapment. Point II is denied.

The judgment of conviction is affirmed.

GARRISON, P.J., and PREWITT, J., concur.